_____

MICHAEL WILSON,

                                        Plaintiff,            DECISION and ORDER

-vs-

                                                  14-CV-6226 CJS

DEPT SUPERINTENDENT MARK BRADT,
C.O. PRUSAK,

                                     Defendants.

_____

## INTRODUCTION

This is an action by prison inmate Michael Wilson ("Wilson" or "Plaintiff"), proceeding *pro se*, alleging pursuant to 42 U.S.C. § 1983 that Defendants violated his First Amendment Right of Access to the Courts.  Now before the Court is Defendants' motion (Docket No. [#20]) to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6).  The application is granted and this action is dismissed.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Amended Complaint, and are accepted as true for purposes of this Decision and Order.[1]  At all

---

[1] The Court "limit[s] itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," but does "not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *West v. Harkness*, Civ. No. 9:17-CV-621 (GTS/DJS), 2018 WL 3748344 at *2 (N.D.N.Y. May 29, 2018) (citations and internal quotation marks omitted).  In particular, the Court limits its consideration to the Amended Complaint and its attachments, since the Court already expressly notified Plaintiff, when it dismissed his original Complaint, that any amended complaint would completely replace the original pleading. *See*, Order (Docket No. [#8]) at p. 9 ("Plaintiff is advised that an amended complaint is intended

relevant times Plaintiff was an inmate confined in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Attica Correctional Facility ("Attica"). At all relevant times, defendants were employed at Attica. In particular, Mark Bradt ("Bradt") was a Deputy Superintendent,[2] and C.O. Prusak ("Prusak") was a corrections officer.

At all relevant times, when inmates at Attica wished to send out mail, including legal mail, they were required to fill out a disbursement form, authorizing the facility to deduct the postage amount from their inmate accounts. The disbursement form (Form 2706) required inmates to indicate the amount of postage being requested, and required them to sign the form below the words, "I hereby acknowledge expenditure of the amount to be deducted from my inmate account."[3] Each disbursement form had to be countersigned by an Attica official and processed by Attica's Correspondence Office. Additionally, "the Court takes judicial notice that DOCCS Directive 4421 has long provided that inmates are entitled to a certain amount of free legal postage each week, and further provides a procedure for prisoners to obtain additional legal postage when certain conditions are met." *Phelan v. Zenzen*, No. 10-CV-6704 CJS, 2012 WL 5420423, at *4 (W.D.N.Y. Nov. 6, 2012) (citation omitted).

---

to **completely replace** the prior complaint in this action. . . . Therefore, Plaintiff's amended complaint must include all of the allegations against each of the defendants against whom he wishes to make claims, so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.") (emphasis in original); see also, *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (citations omitted).

[2] Defendants' counsel indicates that Bradt was actually the Superintendent at Attica, but for purposes of this Decision and Order the Court will rely upon Plaintiff's factual assertion.

[3] *See, e.g.*, Amended Complaint at p. 20.

In or about July 2013, Plaintiff was in the process of litigating a direct appeal from his criminal conviction, before the New York State Supreme Court, Appellate Division Fourth Department ("the Appellate Division."). Plaintiff was represented by an appellate attorney, however, he was dissatisfied with the papers that his attorney had filed on his behalf in support of the appeal. Consequently, Plaintiff notified the Appellate Division of his intention to file a *pro se* supplemental brief.[4] In particular, Plaintiff intended to raise various arguments concerning alleged ineffective assistance provided by his trial counsel, as well as prosecutorial misconduct. Amended Complaint at pp. 7-10. By order dated July 16, 2013, the Appellate Division notified Plaintiff that he would have to file "10 copies of a *pro se* supplemental brief, with proof of service of one copy on assigned counsel and the People pursuant to 22 NYCRR 1000.3(f), on or before August 15, 2013." Amended Complaint at p. 25.

On August 12, 2013, Plaintiff attempted to mail out eleven copies of a "Motion to File a Supplemental Pro Se Brief" to the Appellate Division.[5] Plaintiff placed each of the eleven copies in a separate envelope; ten were addressed to the Appellate Division, and one was addressed to opposing counsel. There is no indication in the Amended Complaint that officials at Attica were aware, at that time, of Plaintiff's deadline for submitting papers to the Appellate Division.

---

[4] Plaintiff's actual communication on this point is not part of the record, but from the Appellate Division's subsequent order, discussed below, it is clear that Plaintiff expressed his intent to file a supplemental brief.

[5] Amended Complaint at p. 22.

Plaintiff indicates that the envelopes were "huge," and that the postage required for each envelope was $5.80.[6]   Accordingly, the total postage required to mail the eleven envelopes was $63.80.   Plaintiff admits that he did not have sufficient funds in his inmate account to cover the cost of the postage.[7] Plaintiff indicates, though, that he believed Attica was obligated to mail all eleven envelopes, "even without any monies in [his] account."[8]   Plaintiff did not request a postage advance, and, indeed, he admits that he was unaware that there was a process for requesting such an advance.

The Amended Complaint contains conflicting information regarding when and how Plaintiff attempted to mail the eleven envelopes.   For example, Plaintiff indicates that on August 12, 2013, he completed just two postage disbursement forms (Form 2706) – one for the eleven copies being sent to the Appellate Division, and one for the copy being sent to opposing counsel.[9]   Further, Plaintiff indicates that he "sent out" all eleven envelopes on August 13, 2013, by placing them in the facility "mail bag."[10]   However, in addition to the aforementioned copies of the two disbursement forms dated August 12, 2013, the Amended Complaint includes copies of nine additional postage disbursement forms that were signed by Plaintiff on August 14, 2013, which is one day after Plaintiff claims he mailed the envelopes.   Moreover, as will be further discussed below, August 14, 2013 was one day before Plaintiff claims to have been notified by Attica's Correspondence

_____

[6]  Amended Complaint at pp. 5, 16.
[7]  Amended Complaint at p. 30 (Plaintiff states that he was "truly indigent.")
[8]  *See*, Amended Complaint at p. 30 (Referring to his "notion of believing that [he] had a right to have access to the Courts 'even without' [any] monies in [his] account."); *see also, id.* (Referring to "the mishaps surround (no funds in my account)").
[9]  Amended Complaint at p. 26.
[10]  Amended Complaint at pp. 26, 29.

Office that there was any problem with his mailing.[11]   These inconsistencies are not explained in the Amended Complaint.

Attica's Correspondence Department processed and mailed out two of the envelopes – one to the Appellate Division and one to opposing counsel.   However, on August 16, 2013, the Correspondent Department returned the other nine envelopes to Plaintiff (all of which had been addressed to the Appellate Division, and which contained copies of Plaintiff's motion), along with the 2706 forms and a memo from Attica's "Correspondence" Department, stating:

> Attached are some legal letter disbursements that are being returned because you have been advanced more than twenty dollar ($20.00) for legal mail.   Per Directive 4421 exceeding the twenty dollar ($20.00) limit shall only be approved if the inmate can show by court order, a statute of limitations, or other legal mail deadline applicable to his individual circumstances that the legal mail must be sent prior to receipt of the next week's free postage allowance.   The inmate must provide the justification for the advance.   The advance will cover postage only, no services such as return receipt and certified mail.

Amended Complaint at p. 26.   The Amended Complaint indicates that the memo, along with the nine un-mailed envelopes, were hand delivered to Plaintiff by defendant C.O. Prusak.[12]   Plaintiff made a contemporaneous handwritten notation on the bottom of the memo, indicating that "C.O. Prusak delivered and handed me back only 9 of my 11 copies[.]"[13]   Plaintiff's handwritten note does not indicate that Prusak said anything to him at that time.

---

[11] *See*, Amended Complaint at p. 29 (In a letter, Plaintiff indicates that on August 16, 2013, he received the subject notice, from the Correspondence Office, which was dated August 15, 2013).
[12] Amended Complaint at p. 29.
[13] Amended Complaint at p. 26.

All of the relevant postage-disbursement forms (2706) that were returned to Plaintiff bear the handwritten initials "CK," as well as the notation, "needs DSP [Deputy Superintendent for Programs] approval." As will be discussed further below, the letters "CK" evidently are the initials of the employee in Attica's Correspondence Office who processed the disbursement forms.

In response to the memo from the Correspondence Department, on August 16, 2013, Plaintiff wrote to Susan Squires ("Squires"), Deputy Superintendent for Administration at Attica, seeking clarification about how to obtain an advance of postage for his legal mail.[14] In his letter to Squires, Plaintiff indicated that he had received a letter from Attica's Correspondence Office, returning nine copies of his motion. Plaintiff asked Squires to approve a further advance of postage, because his application to the Appellate Division was time-sensitive. Plaintiff further asked for clarification on how to mail his envelopes if his request was granted.

On August 20, 2013, Squires sent a memo to Plaintiff, regarding "Advance of Funds," and stating, "You must f[i]ll out and submit an IAS 2708 [("Form 2708")] advance request in order to be approved an advance[ ]."[15]

On August 21, 2013, the Appellate Division notified Plaintiff that on August 20, 2013, it had rejected his "motion seeking extension of time to file a pro se supplemental brief, [due to] non-compliance of [the] Court's rules."[16] The letter did not indicate exactly why the Appellate Division had rejected Plaintiff's application, though it stated, "Please

---

[14] Amended Complaint at p. 28.
[15] Amended Complaint at p. 27.
[16] Amended Complaint at p. 53.

be advised that the Clerk of the Court shall reject a partial or untimely filing (see 22 NYCRR 1000.3[a])."

In response to the letter that Squires had sent to him on August 20, 2013, Plaintiff responded by sending another letter to Squires, which she received on August 26, 2013.[17] Although Plaintiff's letter is not attached to the Amended Complaint, Plaintiff evidently inquired further about the processes for obtaining advance postage and for mailing his envelopes.[18] On August 27, 2013, "C. Parmerter" sent a memo to Plaintiff, indicating that she was responding on Squire's behalf, and that she had referred Plaintiff's letter to the Correspondence Department: "I am responding on behalf of S. Squires, DSA, in regards to the letter received 8/26/13. Your letter and [sic] has been forwarded to the Correspondence Department."[19]

On September 5, 2013, Plaintiff sent a letter to Parmerter, seeking further clarification about the process for obtaining approval for an advance of postage. Specifically, the letter stated in pertinent part:

> Regarding your Memorandum dated August 27, 2013. Please explain what documentation I must forward to Dep. of Programs.

> With all due respect, please be advised that the legal mail I have been attempting to mail out had a deadline of August 15, 2013 which I made correspondence [aware] of. A copy of the Court order has been sent to the Correspondence Office with the appropriate forms signed. However, my legal mail is still being denied advance postage.

---

[17] Amended Complaint at p. 28.
[18] Amended Complaint at p. 28.
[19] Amended Complaint at p. 28. Plaintiff made a handwritten notation on the memo, indicating that it was "in regard to (IAS 2708)." *Id.*

Amended Complaint at p. 31.

On September 7, 2013, Plaintiff wrote another letter, this time addressed to the "Deputy of Administration, Correspondence Office [and] Dept of Programs."[20]   In the letter, Plaintiff began by expressing his confusion about the rules pertaining to postage advances, and indicated that he had believed that he had the right to have all of his legal mail sent out, even if he had no money in his inmate account.   Plaintiff further indicated that he had decided to combine all of the nine envelopes into one package, so that he could avoid having to fill out separate IAS 2708 forms for each envelope.   Plaintiff further expressed confusion as to what an IAS 2706 form was, though he later acknowledged in the letter that an IAS 2706 form is the standard postage disbursement form.   Although Plaintiff's letter consisted of two pages, the second page is not attached to the Amended Complaint.

Liberally construing the Amended Complaint, the Court infers that Plaintiff subsequently attempted to obtain approval for a postage advance, by attempting to re-mail the nine copies of his motion, using a single Form 2708.   However, on September 9, 2013, the Correspondence Department responded to Plaintiff, stating: "You need a 2708 and 2706 attached to *each envelope*.   Also send your documentation for the Dep. [Deputy Superintendent] of Programs to review."[21]  (emphasis added).   Notably, this response from the Correspondence Department was signed by C. K---- (last name illegible), who clearly appears to be the same "CK," mentioned earlier, whose initials

---

[20] Amended Complaint at p. 30.
[21] Amended Complaint at pp. 28, 43.

appear on the Form 2706 postage disbursement forms that were returned to Plaintiff on August 16, 2013.[22]

Subsequently, it appears that Plaintiff had difficulty obtaining nine copies of Form 2708. For example, on September 30, 2013, Plaintiff wrote a letter to the Correspondence Office, indicating that he had obtained six copies of Form 2708, but could not obtain additional copies of the form anywhere in the facility.[23]

On September 21, 2013, Plaintiff wrote to the Inmate Grievance Committee.[24] Notably, this correspondence was in the form of a letter, as opposed to the typical inmate grievance form. In the letter, Plaintiff referenced the fact that he had told defendant C.O. Prusak that there were "no forms on the company" or at the facility law library. According to Plaintiff, he asked Prusak to mail the multiple copies of his motion using only a single form 2708, whereupon Prusak responded, "'I don't give a _ uck,' and that [sic] they will not be mailed out."[25] Plaintiff's letter to the Inmate Grievance Committee continued:

> I am being penalized for not having additional forms that are (not available)(two) law library officers have told me that there are no forms additional to provide me with. The tone and words used by Officer Prusak when he cursed at me, and his demeanor was like he is sick and tired of me trying to send my supplemental briefs out. Twice now he has personally brought my envelopes back to me, after I put then in the mailbag. He is personally liable for that.

Amended Complaint at p. 44.

---

[22] Amended Complaint at pp. 17-21 (the handwritten notations on the 2706 forms state, "Needs DSP approval").
[23] Amended Complaint at p. 32 ("The officer   has now told me (three) times that there are no more forms to provide me with.   Three times I have told this office (Correspondence Office) that I cannot put a form on all (10) envelopes due to the fact I only have 6 forms.").
[24] Amended Complaint at pp. 43-44.
[25] Amended Complaint at p. 43.

On October 27, 2013, Plaintiff wrote a letter to defendant Deputy Superintendent Bradt.[26]   Plaintiff stated that he was writing concerning the "Correspondence Office" and its failure to mail his time-sensitive briefs to the Appellate Division.   Plaintiff stated that he was still attempting to obtain copies of Form 2708, but that he had been told by various corrections officers that Attica's supply of those forms was depleted.   Plaintiff stated that he told defendant C.O. Prusak that there were no forms, but Prusak "simply shrugged his shoulders."[27]   Plaintiff further stated that he was going to attempt to address this problem by combining all of the envelopes into two packages, so that he would only require two copies of Form 2708. (Plaintiff indicated that he had seven copies of form 2708).   Plaintiff further asked Bradt to assist him in obtaining approval for the mailing.

On December 20, 2013, Plaintiff again wrote to the Inmate Grievance Committee.[28]   Plaintiff indicated that he had not received a response to his prior correspondence. Plaintiff asked whether he was supposed to use a particular form to file an inmate grievance, and stated that he had been "told a regular piece of paper articulating [a] grievance was suffic[ient]."[29]

On or about December 23, 2013, Plaintiff sent another letter to defendant Deputy Superintendent Bradt.[30]   The letter complained about the "facility's refusal to send out [Plaintiff's] time sensitive briefs."   Plaintiff stated that he was "sick of" officers yelling at him and being "hostile" about the matter, and he warned Bradt that he did not expect to

---

[26] Amended Complaint at p. 47.
[27] Amended Complaint at p. 47.
[28] Amended Complaint at p. 45.
[29] Amended Complaint at p. 45.
[30] Amended Complaint at p. 49.

suffer any physical retaliation as a result of having written complaints.

On January 5, 2014, Plaintiff wrote another letter to defendant Deputy Superintendent Bradt, complaining that he still had not obtained approval for the postage to mail out copies of his motion to the Appellate Division.[31]   Plaintiff again expressed the view that Attica was required to send out his legal mail, regardless of his ability to pay for postage.   Plaintiff also objected to having to fill out a separate form 2708 for each copy of his mailing.

On May 6, 2014, Plaintiff commenced this action, proceeding *pro se.*   On April 30, 2015, Plaintiff filed the Amended Complaint, which purports to assert claims against Bradt and Prusak, under Section 1983, for violation of Plaintiff's First Amendment right of access to the courts.   On December 16, 2016, Defendants filed the subject motion [#20] to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).   Defendants' motion is based upon multiple grounds, including the following: the Amended Complaint impermissibly seeks money damages against Defendants in their official capacities; the Amended Complaint fails to plead that either defendant was personally involved in the alleged denial of Plaintiff's access to the Courts; the Amended Complaint fails to state a plausible claim for denial of access to the courts; and the Amended Complaint's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

On March 13, 2017, Plaintiff filed a response to Defendants' motion, which the Court has reviewed.

---

[31]  Amended Complaint at pp. 40-41.

DISCUSSION

Plaintiff's *Pro Se* Status

Plaintiff is proceeding *pro se*, and the Court therefore reviews his papers "with special solicitude, mindful that they must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Cicio v. Wenderlich*, 714 F. App'x 96, 97 (2d Cir. Mar. 16, 2018) (citation and internal quotation marks omitted).

Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint, [32] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950

---

[32]The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

(2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

<u>Section 1983</u>

Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09–CV–00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

<u>Denial of Access to the Courts</u>

The Amended Complaint asserts that Bradt and Prusak denied Plaintiff access to the courts. The elements of a First Amendment denial-of-access- to-the-courts claim are clear:

> It is well established that prisoners have a constitutional right to access the courts. The right of access to the courts requires that prisoners defending against criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement not be impeded from presenting those defenses and claims for formal adjudication by a court. . . . To establish standing for a claim for the denial of access to the courts, an inmate must show that he has suffered an "actual injury" traceable to the challenged conduct of prison officials—that is, that a

"nonfrivolous" legal challenge to his judgment of conviction or conditions of confinement had been frustrated or was being impeded due to the actions of prison officials.

*Amaker v. Fischer*, 453 F. App'x 59, 63 (2d Cir. Dec. 20, 2011) (citations and internal quotation marks omitted).

Defendants contend that the Amended Complaint fails to state a plausible claim, because the pleading reveals that Plaintiff's inability to mail out his legal mail was due to his own failure to comply with DOCCS Rules, including Directive 4421. Defendants further indicate that Plaintiff suffered no actual injury from Attica's decision not to mail nine copies of his motion, because the copy that was received by the Appellate Division was untimely in any event. The Court agrees.

*Enforcement of Postage Polices Does Not*
*Amount to Constitutional Violation*

At various points throughout the Amended Complaint, Plaintiff expresses the view that Attica was required to immediately send out his legal mail, regardless of the amount of postage that was required, and regardless of his ability to pay. In this regard, Plaintiff does not allege that he complied with DOCCS rules when he initially attempted to mail out his submissions to the Appellate Division on August 12, 2013 and August 13, 2013. Rather, Plaintiff admits that he did not comply with such rules, since he submitted requests for disbursements from his inmate account, totaling $63.80, when he had no money in his inmate account and had not made a request for a postage advance. Plaintiff claims that he was unaware of the rules pertaining to postage advances. Alternatively, Plaintiff suggests that such rules were not regularly enforced, and that he

was singled out for mistreatment. On this latter point, Plaintiff argues that the postage-advance rule must have been selectively enforced, because he had previously been allowed to incur a large debt in the facility law library, for photocopying, without obtaining advance approval. However, none of those arguments have merit.

To begin with, it is clear that Plaintiff had no unfettered right to have his legal mail sent out, and that Attica's enforcement of DOCCS rules did not deny Plaintiff access to the courts. In a separate case involving this same argument, the Court stated:

> Plaintiff's claim for denial of access to the courts, liberally construed, is that Zenzen refused to send out Plaintiff's legal mail, because Plaintiff had no money in his inmate account to pay for postage. Plaintiff essentially maintains that he has a constitutional right to unlimited free legal postage, and asks the Court to order "Zenzen to allow all inmates to mail out legal mail without interference, the next working day after depositing it in mailbox, postage to be deducted from inmate's account, even if he has no funds in account." Complaint p. 19. Notably, though, Plaintiff does not reference the postage procedures at Five Points, or claim that such procedures are not reasonably related to legitimate penological objectives.

> On this point, the Court takes judicial notice that DOCCS Directive 4421 has long provided that inmates are entitled to a certain amount of free legal postage each week, and further provides a procedure for prisoners to obtain additional legal postage when certain conditions are met. *See, e.g., Pettus v. Bartlett*, 2007 WL 841775 at *9 (W.D.N.Y. Mar.19, 2007) (Siragusa, J.) (Discussing the relevant section of Directive 4421). Plaintiff . . . does not contend that Zenzen failed to follow Directive 4421. Instead, Plaintiff contends that he is entitled to unlimited free postage for legal mail. He is mistaken, and the Complaint fails to plausibly state a claim against Zenzen for denial of access to the Courts.

*Phelan v. Zenzen*, No. 10-CV-6704 CJS, 2012 WL 5420423, at *4 (W.D.N.Y. Nov. 6, 2012). Furthermore, enforcement of Directive 4421 by prison officials, without more, does not establish a denial of access to the courts. *See, e.g., Davidson v. Goord*, No. 99-CV-555S, 2000 WL 33174399, at *9 (W.D.N.Y. Sept. 27, 2000) ("Davidson has not

alleged any factual allegation from which it could be found that Bennett's withholding of Davidson's legal mail, pending approval of the advance postage, was beyond the authorization of DOCS Directive 4421. . . .   Thus, Davidson has failed to allege sufficient facts to state a claim as against Bennett for interfering with Davidson's legal mail, thereby depriving Davidson of his constitutional right of access to the courts.").

Similarly, in this action, the Amended Complaint merely indicates that officials at Attica correctly applied Directive 4421 when they declined to advance Plaintiff more than $20 in postage without advance approval.   In particular, Section III(A)(3) of Directive 4421 states, in pertinent part:

> (d)   To ensure that indigent inmates maintain their right of access to the courts, the facility shall approve an IAS 2708 advance request to pay for first class mail postage if the inmate has insufficient funds and the following conditions are met:
>
> (1) The mail is legal mail[.]
> (2) Any balance of the inmate's free weekly postage allowance is applied to the legal mail postage costs; and
> (3) *The requested advance and the balance of unpaid previous advances for legal mail postage do not exceed $20, except as may be approved under Section III-A-3-f below.*
>
> ***
>
> (f)   *Exceeding the $20 limit shall only be approved is an inmate can show by court rule, court order, a statute of limitations, or other legal deadline applicable to his or her individual circumstance that the legal mail must be sent prior to receipt of the next week's free postage allowance. The inmate must provide justification for such advance.*

DOCCS Directive 4421, Section III(A)(3)(d)&(f). [33]   It is clear from the Amended Complaint that Plaintiff did not comply with these procedures before he submitted his

---

[33] The version of Directive 4421 submitted by Defendants is dated June 2, 2016, however, there is no contention by Plaintiff that the Directive has materially changed since 2013.

mailing in August, 2013. Indeed, Plaintiff admits that he was not even aware of these procedures at that time.

Nevertheless, Plaintiff argues in his response that Attica officials failed to comply with another section of Directive 4421, namely, Section III(A)(3)(g), which states:

> No request for a legal mail advance will be denied by facility staff without prior consultation with the Department's Office of Counsel. Any question whether a particular item qualifies a "legal mail," or whether an advance is allowable, should be directed to such office.

DOCCS Directive 4421, Section III(A)(3)(g). According to Plaintiff, the Court should reject Defendants' reliance on Directive 4421, since they failed to comply with this provision inasmuch as they did not consult with DOCCS Office of Counsel before refusing to grant him a postage advance exceeding $20. However, Plaintiff's argument lacks merit, since it is clear that subsection (g) refers to a properly supported request. Plaintiff here did not submit a properly supported request for a mail advance. Rather, as repeatedly noted earlier, Plaintiff admits both that he was not even aware of the need to make such a request, and that he did not submit an IAS 2708 form with his mailing in August 2013. Accordingly, since Plaintiff did not request a legal mail advance pursuant to DOCCS Directive 4421, Section III(A)(3)(f), officials at Attica could not have violated subsection (g) by denying such a request.

As for Plaintiff's alternative contention that the relevant rules (concerning postage advances) were not uniformly enforced, his argument again lacks merit. In that regard, Plaintiff argues that since the facility law library allowed him to incur a significant debt for *photocopying* expenses without obtaining advance approval, then the Correspondence

Department should also have allowed him to incur a debt for *postage* without such advance approval. However, Directive 4421 deals with "Privileged Correspondence," not photocopying. Whatever rules DOCCS or Attica may have concerning photocopying are irrelevant to this action. Accordingly, the fact that Plaintiff may have been allowed to incur a substantial debt for photocopying has no bearing on this action.

<u>*The Amended Complaint Fails to Plausibly Allege Injury*</u>

Further, even assuming that the Amended Complaint otherwise pleaded an actionable claim for denial of access to the Courts, Defendants have correctly pointed out that the alleged constitutional violations (refusing to mail out all of Plaintiff's mail, failing to provide him with IAS 2708 forms) did not result in an injury, since Plaintiff's submission to the Appellate Division was untimely in any event. On this point, the copy of Plaintiff's application that was promptly mailed out to the Appellate Division was received by the Appellate Division on August 19, 2013,[34] which was four days past Plaintiff's filing deadline. The Appellate Division denied Plaintiff's application and returned the papers to him, stating that "the Clerk of the Court *shall reject* a partial *or untimely* filing."[35] Consequently, even if the Attica Correspondence Department had immediately sent out the remaining nine envelopes to the Appellate Division when Plaintiff first placed them into the mailbag, they also would have been filed too late.

Plaintiff counters that such argument is faulty, since he should be deemed to have "filed" his papers with the Appellate Division as soon as he placed them in the Attica mail

---

[34] Amended Complaint at pp. 22-23.
[35] Amended Complaint at p. 53.

bag.   However, Defendants assert that the Appellate Division does not recognize the "prison mailbox rule" when calculating the timeliness of filings, and this appears to be a correct statement of New York law. *See, Grant v. Senkowski*, 270 A.D.2d 536, 536, 704 N.Y.S.2d 678, 679 (2000) ("Petitioner's placement of the unsigned order to show cause and petition in the facility mailbox only five days prior to the expiration of the Statute of Limitations was clearly insufficient, and we conclude that the proceeding was properly dismissed as untimely."), *aff'd*, 95 N.Y.2d 605, 744 N.E.2d 132 (2001); *see also, Marcus v. New York State Div. of Parole*, 264 A.D.2d 919, 920, 696 N.Y.S.2d 101, 102 (1999) (Rejecting inmate's "mailbox rule" argument, where inmate failed to show that prison staff prevented him from mailing his papers on time: "Supreme Court correctly found in its decision upon reconsideration that petitioner failed to demonstrate any specific conduct of respondent which prevented him from submitting his papers in a timely fashion.").   It therefore appears that Plaintiff's application would have been denied by the Appellate Division as untimely even if all of his copies had been mailed out.

To the extent that the Amended Complaint complains about Plaintiff's inability to mail the nine additional copies of his motion to the Appellate Division following the initial mailing, due to a lack of forms, the pleading also fails to plausibly state injury.   The Appellate Division denied Plaintiff's motion on August 20, 2013, and there would have been be no reason thereafter for Plaintiff to persist in sending the court additional copies of a motion that had already been denied.

Additionally, as to the lack of any injury, the Court takes judicial notice of the fact that, in a collateral attack filed while his direct appeal was still pending, Plaintiff was able to raise, and have considered by the Appellate Division, the same ineffective-assistance-of-counsel claims which he attempted to add to the direct appeal by his motion to file a supplemental *pro se* brief. *See, People v. Wilson*, 162 A.D.3d 1591, 78 N.Y.S.3d 819 (4th Dept. 2018).

### *The Amended Complaint Fails to Allege Personal Involvement*

Bradt and Prusak further contend that the Amended Complaint fails to plausibly plead that they were personally involved in any alleged constitutional violation. Once again, the Court agrees.

For purposes of Section 1983, to establish the requisite "personal involvement" of a defendant in a denial-of-access-to-the-courts claim, "a plaintiff must show that the defendant caused the plaintiff injury or, put less succinctly, that the defendant took or was responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim." *Oliva v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. Nov. 17, 2015).

Here, even assuming that the Amended Complaint plausibly alleged a denial of access to the courts that was actionable under Section 1983, it does not plausibly allege that Prusak was personally involved in such violation. The pleading alleges that Prusak was the staff member who personally delivered the nine un-mailed copies of Plaintiff's motion to him after the mailing was rejected by the Correspondence Department. Beyond that, the pleading contradicts itself as to what Prusak allegedly did. In particular, at one point the pleading alleges that Plaintiff informed Prusak that no 2708 forms were

available, and Prusak responded by shrugging his shoulders, while, at another point, the pleading alleges that Plaintiff told Prusak that no 2708 forms were available, and Prusak responded by stating, "I don't give a _ uck[.] [T]hey will not be mailed out."  However, regardless of whether any or all of those allegations are true, they do not establish Prusak's personal involvement in denying Plaintiff access to the courts.  The Amended Complaint does not indicate that Prusak was the decision-maker who decided not to advance postage to Plaintiff; rather, it merely indicates that Prusak was the person who delivered the envelopes to him afterward.  Nor does the pleading plausibly allege that Prusak was under an obligation to locate additional forms for Plaintiff, or that he actually had such forms and simply refused to provide them to Plaintiff.  Rather, at most, the pleading indicates that Prusak was verbally abusive to Plaintiff when Plaintiff pointed out the fact that no 2708 forms were available at Attica, which is insufficient to state a claim for denial of access to the courts. See, *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("We do not doubt that hostile action toward a litigant could be so offensive as to effectively drive the litigant out of a courthouse and thereby become the functional equivalent of a denial of access.  And the plaintiff may well have experienced the emotional distress and humiliation that she has alleged. However, though these effects, if proven, might be consequential damages components of a section 1983 claim in which actual injury to court access was sufficiently alleged, they are not the type of actual injury that gives rise to a constitutional claim of denial of access to the courts.") (citation omitted).

The Amended Complaint similarly fails to plausibly allege personal involvement by Bradt in a violation of Plaintiff's right of access to the courts. The pleading alleges that between October 2013 and January 2014, which was long after the Appellate Division had denied Plaintiff's motion as untimely, Plaintiff sent four letters to Bradt, complaining about his continuing inability to send out additional copies of the motion that had already been denied. The Amended Complaint admits that Bradt did not respond to any of the letters. Such allegations are insufficient to establish Bradt's personal involvement. *See, e.g., Cater v. New York*, 316 F. Supp. 3d 660 (S.D.N.Y. 2018) (Discussing "the long-standing rule in this Circuit that a mere showing that a plaintiff has written to a supervisor is insufficient to show personal involvement."); *see also, Walker v. Pataro*, No. 99CIV.4607(GBD)(AJP), 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002) ("[D]istrict court decisions in this Circuit have held that it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (internal quotation marks omitted); *Walker v. Pataro*, 2002 WL 664040 at *12 ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.").

## CONCLUSION

Defendants' motion to dismiss [#20] is granted and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court

of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

Further requests to proceed on appeal *in forma pauperis* should be directed on motion to

the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of

the Federal Rules of Appellate Procedure.

      SO ORDERED.

Dated: Rochester, New York
      September 12, 2018

              ENTER:


              /s/ Charles J. Siragusa
              CHARLES J. SIRAGUSA
              United States District Judge